# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FLORES, | 1:10-CV-01375 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction in Los Angeles County Superior Court in 1989 of second degree murder. He is serving a sentence of fifteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its January 26, 2009, decision finding Petitioner unsuitable for parole. Petitioner contends the Board denied his due process rights when it denied parole because no evidence supported the finding of current dangerousness. He also alleges Proposition 9 is an unconstitutional violation of the ex post facto

---

[1] This information is taken from the pleadings and the state court documents attached to Respondent's answer, and are not subject to dispute.

1

1  clause.

2  Petitioner filed a habeas petition challenging the Board's 2009 decision in the Los
3  Angeles County Superior Court on May 19, 2009. The petition was denied in a reasoned
4  decision on June 23, 2009. Petitioner next filed a habeas petition in the California Court of
5  Appeal, Second Appellate District, on August 11, 2009. The appellate court denied the petition
6  on August 20, 2009. Petitioner then filed a habeas petition in the California Supreme Court on
7  October 5, 2009. The petition was summarily denied on March 24, 2010.

8  Petitioner filed the instant federal petition for writ of habeas corpus on August 2, 2010.
9  Respondent filed an answer to the petition on October 21, 2010. Petitioner filed a traverse on
10 November 17, 2010.

## STATEMENT OF FACTS[2]

12 On October 2, 1988, Petitioner took a bicycle belonging to a family member in order to
13 sell it and get money to buy cocaine. He approached a group of several men, including victim
14 Mateo Ramirez, who were drinking beer in front of their apartment complex. Petitioner offered
15 to sell the bike. They were not interested in the bike but offered him a beer, which he accepted.
16 One of the victim's friends was playing with a lasso and hit Petitioner on the back with the rope,
17 leaving a mark. Petitioner got angry and stormed off. He returned about ten minutes later with a
18 group of about six of his friends who had armed themselves with rocks, bricks, a baseball bat,
19 and the concrete cover of a water meter. The group approached the victim and his friends, who
20 fled. The victim, Mr. Ramirez, attempted to escape in his car but his path was blocked. The
21 attackers beat on the car and broke the windows. Mr. Ramirez was pulled out of the car, beaten,
22 and stabbed. He died of multiple stab wounds and a skull fracture.

## DISCUSSION

24 I.   Standard of Review

25 On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
26 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

---

[2] This information is derived from the summary of the crime set forth in the opinion of the Los Angeles County Superior Court.

enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to

or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

4

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

    (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

    (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

    although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense

6

remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. State Court Decision

The superior court provided the last reasoned decision, rejecting Petitioner's claim as follows:

> The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on January 26, 2009. Petitioner was denied parole for three years. The Board concluded that Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on a number of factors, including the commitment offense, Petitioner's past criminal history, and his lack of insight.
>
> The Court finds that there is some evidence to support the Board's finding that the commitment offense was carried out in a manner [that] was especially cruel, in that it demonstrated an exceptionally callous disregard for human suffering and the motive was very trivial in relation to the offense. There is evidence to support the Board's finding that the offense demonstrated an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D). Petitioner was angry about being hit with the lasso by the victim's friend. He gathered his own group of friends and incited them to attack the victim's group. Petitioner's friends armed themselves with rocks, bricks, a baseball bat, and a concrete water meter cover and went after the victim's group. Although the victim's group scattered as Petitioner's group approached, the Petitioner and his friends attacked anyway. The victim tried to escape in his car, but Petitioner's group cornered the fleeing victim's car in the driveway, smashed the car windows, and dragged him from the vehicle before viciously beating and stabbing him to death.
>
> There is also evidence to support the Board's finding that the motive for the crime was very trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E). Petitioner was angered when the victim's friend tried to lasso him, hitting him

on the back. He therefore assembled a group of his friends in order to retaliate, and incited them in their vicious attack on the victim and his friends. The lassoing appeared to be nothing more than a bit of horseplay which did not seriously injure Petitioner, although it hurt his pride. Retaliation or anger over this minor incident was a trivial and senseless reason for inciting a mob to drag a man from his car and beating and stabbing him to death.

In addition, the Board found that Petitioner's past criminal history weighed against a finding of suitability. There is evidence to support this finding. Petitioner has a significant history of criminal convictions, including violent offenses. His criminal behavior began at age 17, when he was adjudicated of robbery and assault with a deadly weapon and committed to the California Youth Authority. His adult offenses include possession of a deadly weapon, rioting, disturbing the peace, robbery, assault with a deadly weapon, attempted robbery, heroin use, and possession of drug paraphernalia. The Petitioner served a prior jail term and violated a grant of probation. He committed the life crime while on parole after serving a prior prison term, showing that he has failed to profit from society's multiple previous attempts to correct his criminality.

After a long period of time, immutable factors, such as the commitment offense and petitioner's past criminal history, may no longer indicate a current risk of danger to society in light of a lengthy period of positive rehabilitation. [Citation.] However, as discussed below, Petitioner's lack of insight into the commitment offense and unsupportive psychological report also weigh against a finding of suitability. In a case such as this one were other factors, such as lack of insight, indicate a lack of rehabilitation, the aggravated circumstances of the commitment offense and prior offenses may provide some evidence of current dangerousness, even decades later. [Citation.]

In addition to the commitment offense, the Board considered the Petitioner's lack of insight regarding the offense. Cal. Code Regs., tit. 15, § 2281, subd. (d)(3). The Board found that Petitioner minimized his conduct relating to the commitment offense. Petitioner stated in the hearing and in his most recent psychological evaluation that he did not stab the victim and was not present during the stabbing. He admits only to throwing a rock at the driver's side of the car and to being on the driver's side when the victim was pulled from the passenger side. He claims that he was pursuing the victim's brother into the apartment complex when the victim was stabbed. Petitioner's version of events is contradicted by an eyewitness account that he was among those pulling the victim from the car and by the presence of human blood on his clothes and wallet. Although Petitioner asserts that he takes full responsibility to the victim's death, he continues to deny being present when the victim was stabbed, despite contrary evidence. This indicates Petitioner's lack of insight into his offense, despite years of incarceration and rehabilitative programming, reflects that his mental state has not completely changed from the time of the offense, and provides some evidence that he remains a current risk of danger to society. [Citation.]

Additionally, the Court finds that there is "some evidence" that Petitioner's latest psychological evaluation is not supportive of release. The Board considered the report of Petitioner's 2008 psychological evaluation, conducted for this hearing. In addition to the lack of insight demonstrated by Petitioner's statements during the evaluation, cited above, the report also indicates that his overall propensity for future violence is in the low moderate to low range and that his general recidivism risk is in the moderate range. While that factor, alone, may not justify a finding of unsuitability, the Board may properly consider it, as it is relevant to a determination of whether the Petitioner is suitable for parole. Cal Code Regs., tit. 15, § 2402(b).

   The Board also considered the Petitioner's post-conviction gains, including his participation in self-help activities and vocational efforts. He has attended AA/NA for many years and has taken self-help seminars. He actively participates in Native American spiritual activities. The Petitioner has completed four vocations - Landscaping, Janitorial, Auto Body and Paint, and Dry Cleaning - and is currently taking Mill and Cabinet. Although Petitioner has not obtained his GED, he recently signed up for pre-GED classes. However, after considering Petitioner's post-conviction gains, the Board concluded that he would nevertheless pose an unreasonable threat to public safety. Penal Code § 3041(b). The Court finds that there is some evidence to support the Board's determination, based on the commitment offense, psychological report, and lack of insight detailed above that were considered by the Board.

   Accordingly, the petition is denied.

(See Resp't's Answer Ex. 2.)

  The state court decision was not objectively unreasonable. First, the state court reasonably determined that some evidence supported the finding that the commitment offense was carried out in an especially heinous, atrocious or cruel manner. There was evidence that the motive for the crime was very trivial. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E). Petitioner admitted the victim was killed because Petitioner's pride was hurt. There was also evidence that the offense was carried out in a manner which demonstrates an exceptional callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D). The victim was dragged from his car and then beaten and stabbed to death using bricks, pieces of concrete, a bat, and a knife. Ultimately, the victim died from stab wounds and a skull fracture. In light of the evidence, the state court determination was not unreasonable.

  Second, the state court reasonably determined that there was some evidence supporting the Board's finding that Petitioner's prior criminal history weighed against suitability. Cal. Code Regs., tit. 15, § 2402, subd. (c)(2). As noted by the superior court, the evidence in support of this finding was substantial. Prior to the underlying offense, Petitioner had committed robberies, assaults with a deadly weapon, rioting, disturbing the peace, attempted robbery, heroin use, and possession of drug paraphernalia. The underlying offense was committed while Petitioner was on parole for a prior conviction. It is clear the state court decision was reasonable.

  The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have

demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the Board did not rely only on immutable factors such as the commitment offense and prior criminal history.

The Board specifically determined Petitioner posed a current risk of danger to the public based on his past and present attitude toward the crime and his minimization of his conduct. Cal. Code Regs., tit. 15, § 2402, subd. (b). As noted by the superior court, Petitioner's version of events is contradicted by the evidence. He fails to take responsibility for his actions. He maintains that he was not present when the victim was pulled from the vehicle and beaten and stabbed to death; however, an eyewitness testified that he was the one who pulled the victim from the vehicle, and human blood was discovered on his clothes and wallet. Petitioner's lack of insight and minimization of his conduct provides some evidence of a current risk of danger to the public if released. In re Shaputis, 44 Cal.4th 1241, 1260 (2008).

The Board also found that Petitioner's psychological evaluation was indicative of a present risk of danger to the public. Petitioner demonstrated a lack of insight and minimized his conduct. The psychologist concluded that Petitioner's overall propensity for future violence is in the moderate to low range, and his overall risk of recidivism is in the moderate range. In Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir. 2010), the Ninth Circuit found that the nature of the commitment offense, in combination with a psychological report determining the petitioner posed a low-to-moderate risk of danger to the public if released, established some evidence of future dangerousness to the public. Such is the case here. The state court's determination was not unreasonable.

Although not mentioned by the superior court, the Board also relied on the fact that Petitioner continued his negative behavior in prison. Cal. Code Regs., tit. 15, § 2402(c)(6). Petitioner had sustained six (6) "CDC-115" serious rules violations while incarcerated. He also sustained six (6) "CDC-128" counseling chronos. Although Petitioner had remained incident-free for a lengthy period of time, his demonstrated failure to abide by the law even after incarceration provided some evidence of a current risk of danger.

1    The Board also considered Petitioner's positive factors. He was commended for his
2 participation in self-help activities and vocations. He had been active in Alcoholics
3 Anonymous/Narcotics Anonymous for many years. He actively participated in spiritual
4 activities. He completed four vocations and was working on a fifth. Nevertheless, after
5 considering the factors in favor of suitability, the Board concluded that the positive aspects of
6 Petitioner's behavior did not outweigh the factors of unsuitability. The Board determined that
7 the circumstances of Petitioner's commitment offense and prior criminal history, along with his
8 lack of insight, minimization of his conduct, negative psychological evaluation, and negative
9 institutional behavior, were more probative of a danger to the public should Petitioner be
10 released. The state courts' determination that there was some evidence to support the Board's
11 2009 decision is not an unreasonable application of California's some evidence standard, nor an
12 unreasonable determination of the facts in light of the record. Accordingly, federal habeas
13 corpus relief is unavailable.

14    B.    Proposition 9

15    Petitioner also contends the Board's implementation of Proposition 9 violates the
16 constitutional prohibition against ex post facto laws. The Ex Post Facto Clause of the United
17 States Constitution prohibits the states from passing any "ex post facto law," a prohibition that
18 "is aimed at laws 'that retroactively alter the definition of crimes or increase the punishment for
19 criminal acts.'" Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995); see also Weaver
20 v. Graham, 450 U.S. 24, 28 (1981) (providing that "[t]he ex post facto prohibition forbids the
21 Congress and the States to enact any law 'which imposes a punishment for an act which was not
22 punishable at the time it was committed; or imposes additional punishment to that then
23 prescribed.'"). The United States Supreme Court has held that "[r]etroactive changes in laws
24 governing parole of prisoners, in some instances, may be violative of this precept." Garner v.
25 Jones, 529 U.S. 244, 250 (2000).

26    On November 4, 2008, California voters passed Proposition 9, the "Victims' Bill of
27 Rights Act of 2008: Marsy's Law," which, *inter alia*, altered the frequency of parole hearings for
28 prisoners not found suitable for parole. Prior to the passage of Proposition 9, in the event a

prisoner was determined unsuitable for parole, a subsequent parole hearing would be held annually thereafter. Cal Penal Code § 3041.5(b)(2) (2008). If the parole board determined it was not reasonable to expect parole would be granted within the next year, it could defer rehearing for two years. Id. If the prisoner was convicted of murder and it was not reasonable to expect he/she would be granted parole within the year, the board could select a rehearing term of up to five years. Id. Proposition 9 changed the frequency of subsequent parole hearings as follows:

> The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:
>
> (A) Fifteen years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole release dates enumerated in subdivision (a) of Section 3041 are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years.
>
> (B) Ten years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that . . . consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than seven additional years.
>
> (C) Three years, five years, or seven years after any hearing at which parole is denied, because . . . consideration of the public and victim's safety requires a more lengthy period of incarceration for the prisoner, but does not require a more lengthy period of incarceration for the prisoner than seven additional years.

Cal. Penal Code § 3041.5(b)(3) (November 4, 2008).

Petitioner claims an ex post facto violation occurred when Proposition 9 was applied to him retroactively. Prior to passage of Proposition 9, Petitioner was eligible for annual parole review hearings. With the passage of Proposition 9, the minimum time he must serve before a subsequent parole hearing is now three years. In this case, the Court does not find an ex post facto violation.

In Morales, a California statute changed the frequency of reconsideration hearings for parole from every year to up to three years for prisoners convicted of more than one murder. 514 U.S. at 503. The Supreme Court determined the statute did not violate ex post facto because the retroactive application of the change in California law did not create "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner v. Jones, 529 U.S. 244, 250 (2000), *quoting*, Morales, 514 U.S. at 509. The Supreme Court noted that the law

1   "did not modify the statutory punishment for any particular offenses," it did not "alter the
2   standards for determining either the initial date of parole eligibility or an inmate's suitability for
3   parole," and it "did not change the basic structure of California's parole law." Garner, 529 U.S. at
4   250, *citing*, Morales, 514 U.S. at 507. Likewise, in this case Proposition 9 did not modify the
5   punishment for Petitioner's offense of attempted murder, it did not alter his initial parole
6   eligibility date, and it did not change the basic structure of California's parole law. The board
7   must consider the same factors in determining parole suitability as before. See Cal. Penal Code
8   3041(b); Cal. Code Regs., tit. 15, § 2402(b).

9   Nevertheless as noted above, in Garner the Supreme Court found that "[r]etroactive
10  changes in laws governing parole of prisoners, in some instances, may be violative of this
11  precept." 529 U.S. at 250. In Garner, the Supreme Court determined that an amendment to
12  Georgia's parole law did not violate ex post facto even where the frequency of reconsideration
13  hearings was changed from every three years to every eight years. Id. at 256. The Court held that
14  it could not conclude that the change in Georgia law lengthened the prisoner's time of actual
15  imprisonment because Georgia law vested broad discretion with the parole board to set a
16  prisoner's date of rehearing. Id. at 254-56. In addition, the Court found it significant that the
17  parole board's own policies permitted "expedited parole reviews in the event of a change in [a
18  prisoner's] circumstance or where the Board receives new information that would warrant a
19  sooner review." Id. at 254 [Citation.].

20  Here, the California parole board is still vested with broad discretion in selecting a date of
21  rehearing from three years to 15 years. While it is true that Petitioner is no longer eligible for
22  annual parole review hearings as determined by the Board, and a date must be set at the
23  minimum of three years, the Board retains the discretion, as did the Georgia parole board in
24  Garner, to advance a hearing at any time should there be a change in circumstances. Pursuant to
25  Cal. Penal Code § 3041.5(b)(4), the Board

> may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).

1  Based on the Supreme Court's holding in Garner, this Court does not find, and Petitioner has not
2  demonstrated, that Proposition 9 creates more than just a "speculative and attenuated possibility
3  of producing the prohibited effect of increasing the measure of punishment for covered crimes."
4  Garner, 529 U.S. at 251, *quoting*, Morales, 514 U.S. at 509.  For the above reasons, Petitioner's
5  challenge to Proposition 9 must fail.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The instant petition for writ of habeas corpus be DENIED; and

2.   The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 16, 2010**             **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE